## Selser et al. *versus* Roberts & Co.

1. A sale of chattels in bulk cannot be regarded as a sale by sample simply because a portion only was examined by the vendee.

2. In such case, if a full opportunity was afforded the vendee to inspect the bulk, it will be presumed, in the absence of express evidence showing that the parties intended a sale by sample, that the sale was by inspection.

3. Where, therefore, the evidence disclosed that the vendor offered to open all the goods to the examination of the vendee, who examined a portion only and then purchased the lot, it is error, in the absence of other evidence, to submit to the jury to find as a question of fact whether the sale was by inspection or by sample.

4. A sale of chattels by sample, without fraud, or other circumstances fixing the character of the sample as a standard of quality, does not imply any warranty of quality, but only that the goods shall correspond with the sample in kind and be merchantable as that kind.

5. Boyd *v.* Wilson, 2 Norris, 319, followed.

6. In such a sale there is no implied warranty that the goods are sound, or undamaged, and no action could be maintained by the vendee, if the sample were sound and undamaged and the goods unsound and damaged, though still merchantable as the kind of the sample.

7. If, however, the goods were damaged, spoiled or unsound to such an extent as to cease to be merchantable, as that kind for which the sample was sold, or so as to be changed into an article substantially different in kind from the sample, assumpsit could be maintained upon the implied warranty of their merchantability as the kind of the sample, and of their similarity therewith in kind.

January 31, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1, of *Philadelphia county:* Of January Term, 1884, No. 60.

Assumpsit, by Charles N. Selser et al., trading as Selser & Brother, against Thomas Roberts et al., trading as Roberts & Co., to recover the sum of $296.22, with interest thereon, for goods sold and delivered. The defendants admitted the debt, but pleaded a set-off of $212, and interest.

On the trial, before BIDDLE, J., it appeared that the alleged set-off arose from the following collateral transaction: On October 22, 1880, George W. Roberts, representing the defendant firm, visited the store of the plaintiffs, who were dealers in fruits, for the purpose of purchasing one hundred boxes of unpared evaporated peaches. John A. Selser, a member of the plaintiff firm, showed him a lot of one hundred or more boxes of such peaches, and offered to open them for his in-

spection. Mr. Roberts testified that he asked Selser to give him a sample of these goods; that an opportunity was offered him to inspect the contents of all the boxes, but as such examination would have taken several hours, he declined to do so: that he examined the contents of three or four boxes, and found them to be sound and undamaged peaches of the kind desired. He expressed his satisfaction with their quality and purchased a hundred boxes for $750, which his firm subsequently paid. After their delivery, some forty-seven boxes proved mouldy and unsound. To determine the condition of the fruit, the parties chose arbitrators, who duly found that the contents of these forty-seven boxes were " unmerchantable." It was further agreed by the parties that the defendants should sell the goods and charge the loss, if any, to loss account, the issue to await the result of a somewhat similar dispute between the defendants and M. Semple & Co. If this latter case was decided in favor of Semple & Co., then it was agreed that Roberts & Co. should have no claim on Selser & Bro., but if it was decided in favor of Roberts & Co., then Selser & Bro. agreed to pay Roberts & Co. the amount of the loss, if any, sustained on the re-sale of the peaches. It was in evidence that the case between Roberts & Co. and Semple & Co. was undecided. The defendants sold the goods at a loss of $212, which sum, with interest, is the set-off claimed.

The Court charged the jury :—

" The first question is, whether this sale was a sale by inspection or by sample. A sale by inspection is where the buyer has an opportunity to inspect the goods. In such case the only obligation on the seller is that the buyer shall get the identical goods; that is, if he had the opportunity to examine as many as he pleased.

" On the other hand, the defendants contend that they purchased by sample; that they were shown a sample of the goods. [The law in regard to sale by sample, I mean the law in Pennsylvania, is this: If you buy by sample, the seller is not responsible for the goods; they need not correspond with the sample except in kind, but the goods must be merchantable as that kind. By merchantable as that kind is meant that the goods may be of a quality very inferior to the sample, but they must be sound goods; they must not be damaged or spoiled, and must be fit for the use for which they are generally intended. To illustrate: if you sold one hundred barrels of apples by one as a sample, you would be responsible as to kind, but not as to quality; the other ninety-nine might be of a kind very inferior to the sample, but if they were sound apples you would not be responsible. But if they were rotten or spoiled they would still be salable;

they might be 'fit for hog feed, but that is not what is meant by merchantable, and you would be responsible. Now the defendants contend that they bought by sample, and that although they received the identical goods, they were spoiled, unfit for the use for which they were intended. They must be merchantable under the denomination affixed to them by the seller. If you believe that, you will allow defendants their claim of set-off.] If, on the other hand, you believe that these goods were sold by inspection, and that the defendants got the identical goods sold, you will reject their claim of set-off."

Verdict for the plaintiffs, for $63.87, and judgment thereon. The plaintiffs thereupon took this writ of error, assigning for error the portion of the charge inclosed in brackets.

*Jos. W. Hunsicker*, for the plaintiffs in error.—Our first objection to the portion of the judge's charge, assigned as error, is that it was not warranted by the evidence. The testimony clearly established a sale by inspection, and the jury should not have been allowed to find that the sale was by sample. But even as applied to a sale by sample, the instruction of the court was erroneous. The learned judge charged that in the absence of fraud or warranty, the seller by sample must deliver a sound article; that by merchantable is meant *sound* goods of the kind, not damaged or spoiled, and that the goods must be fit for the purpose intended. This, we submit, was error: Boyd v. Wilson, 2 Norris, 319; Kirk v. Nice, 2 W., 367; Fraley v. Bispham, 10 Barr., 320; Eagan v. Call, 10 Casey, 236; Weimer v. Clement, 1 Wr., 147.

*George Junkin*, for the defendants in error.

Mr. Justice CLARK delivered the opinion of the Court October 6, 1884.

The plaintiffs claim in this case is $296.22 for goods sold and delivered. The defendants admit this claim to be correct, but interpose a set-off amounting to $212, with interest. This set-off arises out of a distinct transaction. The plaintiffs, and also the defendants, are dealers in fruits in the city of Philadelphia. On the 22d October, 1880, the defendants purchased of the plaintiffs, at thirty days' credit, 100 boxes of unpared evaporated peaches, 5000 lbs., at 15 cents per lb., amounting to $750, and, at the expiration of the thirty days' credit, paid the price stipulated. From sixty to ninety days after the purchase forty-seven boxes proved to be mouldy and damaged. The condition of this portion of the fruit having been submitted to arbitration, it was determined to be then

unmarketable. The defendants, by agreement, subsequently sold the forty-seven boxes, and now claim a loss of $212 on them. This loss, with the interest, is the amount of the set-off.

The facts attending the purchase of the peaches are not seriously disputed.

The court, however, submitted to the jury, as a question of fact, whether the sale was by inspection or by sample. In this, we think, there was error. There was no evidence to justify such a submission. If the testimony of the contracting parties is believed, the sale was certainly by inspection. It cannot be doubted that the intent of the parties, in such case, is in general a question for the jury; but there is no evidence here of a sale by sample, nothing which could justify a jury in so finding. The goods, in bulk, were on hand, and were exhibited to the buyer; their condition and quality were, it is admitted, readily ascertainable by inspection, and a full opportunity to that end was afforded. Mr. Selser offered to open, and did open and show, as many boxes as the vendee wished to see, and Mr. Roberts examined all that were opened. The buyer bought upon his own judgment; no representation as to quality or condition was made, no fraud is alleged, no warranty is shown. The parties were dealers only, not manufacturers or producers, no confidential relation existed between them, and the vendor's means of knowledge were no greater than those of the vendee. It is true that three or four boxes only were opened, and these were examined as a specimen of the whole; but they were all thrown open to inspection, and the buyer, after an examination of a part, declared himself satisfied, and made the purchase. If it was inconvenient to examine all, the buyer, if still unsatisfied, should have protected himself by a warranty.

A sale of grain, or other commodity, in bulk, cannot be regarded as a sale by sample, simply because a portion only is exposed to view. If the bulk is thrown open to inspection, the buyer is considered to have inspected the bulk, and not to have relied upon that only which is exposed to view as a sample. The intention of the parties in such case is to sell by inspection, not by sample.

This was, therefore, the sale of ascertained, specific goods, the title to which passed by the sale; there is no implied warranty of quality or condition; the buyer purchased upon his own judgment, and *caveat emptor* is the rule which governs the transaction. Carson v. Baillie, 19 Penna. St., 375; Barr v. Gibson, 3 M. & W., 390; Benjamin on Sales, and Wharton on Contracts.

Assuming, however, that a sale by sample was intended by

·the parties, and that such a sale is established by the verdict of the jury, we cannot agree with the learned court below as to the legal effect of such a sale. It is certainly settled, in a long line of cases in Pennsylvania, that a sale of chattels by the production of a sample, without fraud or other circumstance fixing the character of the sample as a standard of quality, does not imply any warranty of quality. Differ as we may as to the policy or propriety of such a principle, we cannot deny that it is now recognized as the settled law of this State. Borrekins *v.* Bevan, 3 Rawle, 23 ; Jennings *v.* Gratz, Id., 169 ; Fraley *v.* Bispham, 10 Barr, 320 ; Whittaker *v.* Eastwich, 25 P. F. S.. 229 ; Boyd *v.* Wilson, 2 Norr., 319. "The sample (as stated in the case last cited), under such circumstances, pure and simple, becomes a guaranty only that the article to be delivered shall follow its kind, and be merchantable, simply."

The court very properly instructed the jury thus: "The law in regard to sale by sample—I mean the law in Pennsylvania—is this: If you buy by sample the seller is not responsible for the goods; they need not correspond with the sample, except in kind; but the goods must be merchantable as that kind." Thus far the charge is clearly right, but in what follows it was as clearly wrong. The court, apparently by way of explanation, proceeds: "By merchantable, as that kind is meant that the goods may be of a quality very inferior to the sample, but they must be sound goods; they must not be damaged or spoiled, and must be fit for the use for which they are generally intended." We agree that in a sale of goods by sample, in Pennsylvania, they must correspond with the sample in kind, and must be merchantable as that kind; but there is no implied warranty that they are "sound goods," "not damaged or spoiled." When goods have become unsaleable or unmerchantable they have ceased to be of the kind they originally were. A barrel of sound apples and a barrel of rotten apples are articles entirely different in kind, and the same may be said of a box of sound unpared evaporated peaches, and one so mouldy and decayed as to be unmerchantable as such. There is no warranty implied as to the different grades of quality so long as the identity of the goods in kind remains. To hold that a sale by sample, without more, imports a sale of sound goods not damaged or spoiled, would in some cases give the bulk a higher standard of excellence, in quality or condition, than the sample itself. The degree of unsoundness which will support an assumpsit upon an implied warranty, must be such as destroys the merchantable character of the commodity sold, and converts it into an article substantially different in kind from that which

was sold. We apprehend that this was the instruction which the court intended to give, as the methods of illustration employed sustain this view; but the charge, as expressed, is susceptible of a very different construction, and is misleading in its tendency.

It further appears that after this controversy arose the parties, by agreement, referred the question of the then condition of the fruit to arbitration. Two of the arbitrators were examined as to the nature of the reference. It was merely by oral agreement; but, according to a memorandum made at the time by the arbitrators, it was substantially as follows:

The arbitrators were to decide upon the present condition of the fruit, as to whether merchantable or not, but to have nothing to say as to who should bear the loss; Roberts & Co., to dispose of the goods; loss, if any, to be charged to "loss account," and the issue to await the result of a dispute, or case, between Thomas Roberts & Co. and M. Semple & Co. If this case is decided in favor of M. Semple & Co., Thos. Roberts & Co. to have no claim on Selser & Bro.; if decided in favor of Thos. Roberts & Co., Selser & Bro. agree to pay Thos. Roberts & Co. the amount of the loss, with interest.

The plaintiff, Mr. Selser, gave substantially the same statement as to the terms of the reference. The only other persons present at the time were the remaining arbitrator, Mr. Githens, and one of the defendants, Mr. Thomas Roberts, neither of whom were examined on the subject.

Referring to this agreement, the court charged the jury as follows: "The plaintiffs claim that it was agreed at the time of the arbitration that defendants should sell the fruit, and, if any loss, charge it to loss account, the issue to await the result of a dispute between the defendants and M. Semple & Co. If that case was decided in favor of M. Semple & Co., defendants to have no claim on plaintiffs, and if decided in favor of defendants, plaintiffs to pay defendants the loss, with interest, and that this suit is not yet decided. On the other hand, the defendants claim that the issue was to depend on the result of another case in dispute between the defendants and the Dover Packing Company. If you should believe that the agreement was to depend on the decision in the case of defendants and M. Semple & Co., you will reject defendants' claim of set-off. If, however, you should believe that it was to depend on the decision of the other case, the Dover Packing Company case, and that case has been decided in favor of defendants, then you will allow the set-off. This is a question for you."

There was some evidence of a suit or controversy between

Roberts & Co. and Semple & Co., but there was none whatever as to any such suit with the Dover Packing Company. Some such allusion was made by counsel in the cross-examination of Mr. Selser, but there was no testimony on that subject. The jury should not have been instructed to find a fact of which there was absolutely no proof.

The judgment is reversed, and a venire facias de novo awarded.