## Sidney School Furniture Co., Plff. in Err., *v.* School District of Warsaw Township.

Upon a sale of goods by sample there is no implied warranty of quality, or that the goods sold shall be equal in value to the sample.

Where the charge is part of the record and brought before the supreme court by writ of error, it is the duty of that court to notice assignments of error to the charge, even though no exception to the charge was taken in the court below.

(Decided November 1, 1886.)

Argued October 8, 1886, before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. October Term, 1886, No. 135, W. D. Error to the Common Pleas of Jefferson County to review a judgment on a verdict for defendant in an action of assumpsit. Reversed.

The facts are fully set out in the following charge to the jury in the court below, by WILSON, P. J.:

---

NOTE.—An appeal was taken from the judgment entered on the second trial of this case, and was reversed in 122 Pa. 494, 9 Am. St. Rep. 124, 15 Atl. 881. Likewise on the third trial, see 130 Pa. 76, 18 Atl. 604.

By the act of April 13, 1887 (P. L. 21), it is provided that sales by sample, unless the parties shall agree otherwise, shall constitute an implied warranty that the property sold shall be the same in quality as the sample shown.

As to implied warranty upon sale of goods, see also the following editorial notes containing a full presentation of the authorities on their respective phases of the subject: Implied warranty of quality in sales by description, note to Murchie v. Cornell, 14 L. R. A. 492; implied warranty of fitness of property bought for special purposes, note to McQuaid v. Ross, 22 L. R. A. 187; implied warranty of genuineness upon sale of negotiable paper, note to Strauss v. Hensey, 36 L. R. A. 92; implied warranty on sale of stock, note to McClure v. Central Trust Co. 53 L. R. A. 153.

"The Sidney School Furniture Company, John Loughlin, sole proprietor, has brought its action of assumpsit in this court against the school district of Warsaw township on a contract in writing, as follows:

" 'This contract, made the 25th day of July, 1885, between Sidney School Furniture Company (John Loughlin, sole proprietor) of Sidney, Ohio, and board of directors of school district No. —, in Warsaw township, Jefferson county, state of Pennsylvania, shows that the Sidney School Furniture Company agrees to deliver on cars at the factory, in knock down form, the following described school furniture, etc., to be shipped on or about August 10, 1885, to Mr. S. W. Temple, at Brockwayville station, on Rochester & Clearfield Railroad, in Jefferson county, state of Pennsylvania, his postoffice being Warsaw, in Jefferson county, state of Pennsylvania: sixty-six number 1 double desks, sixty-six number 2 double desks, sixty-six number 3 double desks, sixty-six number 4 double desks, twenty-two number 1 double rears, twenty-two number 3 double rears. Grand total, $985.81. The undersigned school officers, who are authorized to buy, agree to receive the above-named furniture, etc., at the station above named, and pay for the same on arrival the sum of $985.81 in school orders or bonds, bearing 6 per cent interest from October 1, 1885, until paid for, and to become due on the following dates: $196.80, October 1, 1885; $277.36, October 1, 1886; $262.56, October 1, 1887; $249.15, October 1, 1888. (Signed) G. H. Hilliard, President, S. W. Temple, Secretary, School Directors or Committee. For and in consideration of the above agreement, we guarantee that the furniture shall be made of seasoned material, and give good satisfaction. If any castings are broken in shipping, we agree to supply duplicates and make no charge for them. Ink wells for the four largest sizes of desks, and all necessary screws, bolts, etc., will be furnished. Directions for putting desks together will be sent when they are shipped. Special notice: All bills must be settled with us. No agent is allowed to receive payment nor settle any bills unless he can show written authority from us. Sidney School Furniture Company (John Loughlin, sole proprietor), by H. M. Sweet, agent.'

"The plaintiff declares that the contract read was duly authorized by a vote of the school board of the school district of Warsaw township, and that the defendant purchased from it

the furniture described in the contract; that the plaintiff agreed the furniture should be shipped on or about August 10, 1885, to S. W. Temple, secretary of the board, at Brockwayville station, on the Rochester & Clearfield Railroad; that the defendant agreed to receive it and pay for it on arrival the sum of $985.81 in school orders or bonds; that the plaintiff shipped the school furniture to the defendant in accordance with the contract, and after the delivery thereof demanded it should make payment and deliver the orders and bonds as agreed upon in the contract, and that the defendant has disregarded the contract and refused to deliver the school orders or bonds, and has not paid any part of the sum stated.

"The plaintiff has offered evidence to prove the allegations mentioned, and asks a verdict for the sum demanded, including interest from October 1, 1885, $23.33; and the amount of its statement of claim is $1,009.14.

"The defendant appears and says it has a just and legal defense to the whole of the plaintiff's claim, and has offered evidence alleging that it was induced to make and execute the contract by certain representations of the plaintiff's agent, H. M. Sweet, which were false. Its evidence was substantially that when the school board met to consider the propriety of negotiating for the furniture, there were present three rival agents, who submitted the merits of their respective school desks and seats to the board, and after a hearing the board postponed final action to a later date, and the agents were notified of the action of the board; that Mr. Sweet reappeared after the other agents departed, before the meeting of the board had adjourned, and insisted that he represented the best seats and desks in general use, and if the defendant would enter into a contract with him as agent of the plaintiff, he would furnish and deliver the school furniture to conform to the sample which he then and there exhibited, except double in lieu of single desks and seats, and if the board would contract, they would examine similar desks manufactured by the plaintiff and in use in the township of Rose, in Jefferson county, in the Coder schoolhouse, and if after examination they were not satisfied, the contract should be void.

"Soon after, Messrs. Hilliard, Smith, and Love, three of the directors, went to the Coder schoolhouse and examined the desks there, and found them defective in material, workman-

ship, and several other details, on account of which they were not satisfactory to the school board. Under the same circumstances others of the board of directors of Warsaw township visited the schoolhouse in Du Bois, with the same intention and with a like result, and on the 28th of July, 1885, a notice was sent by telegraph, signed G. H. Hilliard, President, addressed to the plaintiff, to take no action on the order until further instructions.

"On the 7th of August, in the same year, the school board reconvened, received the reports of the members who had made the examination that the desks in the Coder and the Du Bois schoolhouses were not satisfactory, being of inferior material and workmanship, the hinge joints and bolts in many of the desks loose, out of order, and not durable; whereupon, the directors passed a resolution to rescind the contract, notice of which was sent by them to plaintiff, and received by it.

"The defendant further alleges that the representations made by plaintiff's agent were false; that the furniture shipped by the plaintiff to Brockwayville was not like the sample exhibited by the agent, when the contract was made; that the furniture was shipped in bulk to the consignee, S. W. Temple, mentioned in the contract, who opened a portion thereof, and with others made an examination of the contents, and they found the goods in many important particulars defective; that the material used was not properly seasoned, the workmanship inferior, the finish not good, and the woods used not the same as in the sample, many of the seats not furnished with the improved hinge, the T-head on arm of iron standard for the top not continuous and solid, and they did not conform to the sample shown by the plaintiff's agent.

"The plaintiff offered the testimony of several witnesses on the material allegations and facts mentioned in the foregoing statement, and says that its agent had with him a sample desk and blocks of wood showing T-head groove and T-head tongue, and has presented the blocks he had at the meeting of the board and another sample of the desk and seat, before you. It says that in the construction of the seats the first slat was driven in from the top of the iron rib, then the next, and the next, each in succession, tongued, grooved, and glued together, in one piece, thus giving a continuous square bearing on both sides the metal the entire length of the back and also of the seat; that the agent

did not represent to the board a continuous T-head, but a continuous square bearing, and that he did not assert there was a continuous bearing on all sides of the T-head on top of the T-head; and it was further explained there was a shoulder, which when the buffer yielded slightly, by weight being applied, relieved the buffer of the strain, and the castings would come together when severely strained, and in many other details explained by the models and the goods shipped under the contract, that there was a substantial compliance with the contract.

"Plaintiff also claims that the furniture in the Coder and the Du Bois schoolhouses was entirely different from that alleged by the defendant, and that the goods, although made by the plaintiff, were not as good as the sample exhibited, because improvements had been made since they had been bought a few years ago; that the seats in the schoolhouses referred to had rough usage, and the specimens offered in evidence did not fairly represent the actual condition of the majority of the desks and seats; that there was no additional contract and nothing said when the contract was executed about its being rescinded; that there was no cherry in the sample desk exhibited to the board, and the agent did not tell the board there was cherry in it, and that the visit to another school district, to inspect any other furniture in use in the schoolhouse, bought from the plaintiff, was limited to the following Monday, when the agent would furnish the transportation at his own expense, and that the board did not act as invited.

"The plaintiff also offered evidence to establish the facts that the goods named in the contract were shipped on the 10th of August, 1885, the time agreed upon, and on the 16th of the same month were at Brockwayville and remained in the same railroad car in which they were shipped in Sidney, Ohio, from that date to December 15, following, when they were removed into the freight station house at Brockwayville; and a part of the goods have been submitted to you for inspection, in connection with the evidence, to show substantial compliance with the terms of the contract. To this the defendant rejoined that the sample desk and seat offered in evidence was not as good as the sample exhibited to the board when the contract was signed.

"If the jury believe from the evidence that the school district of Warsaw township executed the contract in evidence before you, then the covenants on its part therein contained will be

binding upon it, unless the jury further believe from the evidence that the defendant school district was induced to sign the same by some falsehood and fraud practised on the defendant by the agent of the plaintiff; and such fraud must not be presumed by the jury without proof, and it must be proved by a preponderance of evidence.

"The jury are further instructed that to rescind a contract on the ground of fraud, notice of such intention must be promptly given and as soon as it can reasonably be done after discovering the facts which entitle it to be rescinded, or else be held to have ratified the contract. In this case, whether the defendant gave the plaintiff notice of its intention to rescind the contract in question, and whether such notice was given as soon as it could reasonably be done after the alleged discovery of the facts relied upon as giving the right to rescind are questions of fact to be determined by the jury from the evidence in the case.

"[Where goods are offered for sale under such circumstances that there is no reasonable opportunity to inspect them by the purchaser, and the vendor exhibits what he represents to be a sample of the goods offered, and a sale is thereby effected, then the vendor impliedly warrants the quality of the bulk goods so sold to be equal to that of the sample.

"If the jury believe from the evidence that there was a contract between the parties, by which it was agreed that the plaintiff would sell and deliver the school furniture therein mentioned, and that the plaintiff's agent had with him what he represented as a sample of the goods to be delivered, then there was an implied warranty that the article so contracted to be delivered should be equal in value to the sample so shown; and if the goods forwarded to the defendant were not equal in quality to the sample, the defendant was under no obligation to keep them. It is an implied condition in all sales by sample that the buyer shall have a fair opportunity of examining the bulk of the articles sold, and of comparing them with the sample before determining whether to accept them or not.]   .   .   . "

Defendant, *inter alia,* presented the following point:

3. As the plaintiff guaranteed the furniture to be "made of seasoned material and satisfactory," if the furniture shipped was not seasoned, and was such as was not in conformity to the sample, and was unsatisfactory, the defendant had a right to

decline to receive the furniture, and if the jury so find, their verdict should be for the defendant.

· The jury rendered a verdict for the defendant, upon which judgment was entered; and plaintiff took this writ, assigning as error the action of the court in affirming defendant's third point and the portion of the charge inclosed in brackets.

*White & Scott,* for plaintiff in error.—Cited Borrekins v. Bevan, 3 Rawle, 23, 23 Am. Dec. 85; Jennings v. Gratz, 3 Rawle, 169, 23 Am. Dec. 111; Fraley v. Bispham, 10 Pa. 320, 51 Am. Dec. 486; Whitaker v. Eastwick, 75 Pa. 229; Boyd v. Wilson, 83 Pa. 319, 24 Am. Rep. 176; Kirk v. Nice, 2 Watts, 367; M'Farland v. Newman, 9 Watts, 56, 34 Am. Dec. 497; Carson v. Baillie, 19 Pa. 378, 57 Am. Dec. 659; Wetherill v. Neilson, 20 Pa. 448, 59 Am. Dec. 741; Eagan v. Call, 34 Pa. 236, 75 Am. Dec. 653; Weimer v. Clement, 37 Pa. 147, 78 Am. Dec. 411; Selser v. Roberts, 105 Pa. 242.

*Jenks & Clark,* for defendant in error.—The word "satisfactory" means giving or producing satisfaction, particularly relieving the mind from doubt or uncertainty, and enabling it to rest with confidence, and as applied to the subject-matter in the third point it means to give good satisfaction to the defendants, the purchasers. Unless it is satisfactory to the purchasers they need not accept it. This point is well settled in the case of Singerly v. Thayer, Pittsb. L. J. of May 12, 1886, pp. 379, 380, citing Gray v. Central R. Co. 11 Hun, 70; Brown v. Foster, 113 Mass. 136, 18 Am. Rep. 463; Zaleski v. Clark, 44 Conn. 218, 26 Am. Rep. 446; Gibson v. Cranage, 39 Mich. 49, 33 Am. Rep. 351; Hartman v. Blackburn, 7 Pittsb. L. J. 140.

As to the assignment of error to the general charge of the court, we request that it should be disregarded, because no exception was taken thereto, nor bill sealed until the 24th day of May, 1886, almost three months after the verdict was had in the case, which is too late. McAdams v. Stilwell, 13 Pa. 90.

OPINION BY MR. JUSTICE GREEN:

The portion of the charge covered by the second assignment of error was a distinct direction to the jury that upon a sale of goods by sample there is an implied warranty that the goods sold should be of a quality equal to that of the sample. The idea was repeated in the second clause of the language excepted

to, with the additional statement·that the goods sold should be equal in value to the sample. That this is contrary to the perfectly well-settled law of this commonwealth is so manifest that no discussion is required to prove it.

The case of Borrekins v. Bevan, 3 Rawle, 23, 23 Am. Dec. 85, was decided in 1831, and from that time to the present the doctrine that upon a sale of goods by sample there is no implied warranty of quality has received the constant sanction of this court without any interruption. It has been enforced many times in circumstances of great hardship to the purchaser, and not without a feeling of reluctance on the part of the courts, in view of its apparent lack of justice in particular cases. But it has been enforced nevertheless, and the frequency of our judgments in accordance with its terms has so firmly established it in our system of jurisprudence that nothing but an act of the legislature can now dislodge it. Many lawyers and judges of the highest character think that such a course ought to be taken, but until it is taken we do not feel at liberty to change the law. We indicated this in one of our most recent utterances upon this subject, in the case of Selser v. Roberts, 105 Pa. 242. It follows that the present case must be reversed on the second assignment of error.

It was argued that this portion of the charge was not excepted to immediately after the retirement of the jury, and that by a rule of court in Jefferson county exceptions to the charge must be made immediately after the jury retire, and hence the exception was taken too late, and must be now disregarded. In point of fact the verdict was rendered on February 19, 1886, and the exception was formally applied for, and allowed by the court on May 24, 1886. The rule of court, however, was not adopted until March 18, 1886, and hence was not applicable. The charge having been reduced to writing and filed became a part of the record, and was as open to exception in this case as though the rule had not been adopted. Being a part of the record and brought here by writ of error, it would be our duty to notice any assignments of error to it made here, even though no exception was taken in the court below. Downing v. Baldwin, 1 Serg. & R. 298; Wheeler v. Winn, 53 Pa. 122, 91 Am. Dec. 186; Act of March 24, 1877, § 2, P. L. 39.

Judgment reversed and *venire de novo* awarded.

Mr. Justice STERRETT dissents.