The Maine Electric Company *v.* General Engineering Works, Appellant.

398 

Argued October 10, 1928. 

 Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. 

*Clarence L. Mitchell, of Kirchner, Mitchell & White,* for appellant, cited: Samuel v. Delaware River Steel Company, 69 Pa. Superior Ct. 605; Sheritt v. Roberts Engineering Co., 73 Pa. Superior Ct. 150.

*Wm. Barclay Lex,* and with him *Charles C. Norris, Jr.,* and *C. J. Hepburn,* for appellee.

OPINION BY KELLER, J., January 25, 1929:

Action of assumpsit for goods sold and delivered on written order.

The learned judge of the court below made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense. On subsequent consideration, in connection with the preparation of his opinion, he came to the conclusion that the affidavit of defense sufficiently traversed the statement of claim and raised a question of fact to be passed on by a jury and that his action in entering the judgment was erroneous and should be reversed.

We agree with him that the plaintiff's right to a summary judgment without trial, is not sufficiently clear to sustain the judgment.

Plaintiff manufactures windlasses for steamships and conducts its business at Portland, Maine.

Defendant is engaged in making repairs to steamships in the City of Philadelphia, and had been awarded the contract to repair a windlass on the Steamship Bellerose, which had been made by plaintiff and was designated by it as style G. 2563. On January 28, 1927, it wrote plaintiff informing it of said contract and ordered a new frame for the port side of anchor windlass, 10" x 12" G. 2563 on board said steamship, delivery in one week by express. In the same letter defendant asked for a quotation and delivery on a new jack shaft for the said windlass, complete with double gear, nigger head, etc. On January 31, 1927, plaintiff acknowledged receipt of the order for windlass frame, price $190, f. o. b. Portland, Maine, shipment to be made by express in two weeks, and quoted a price for jack shaft, etc., as follows:

| | |
|---|---:|
| 1—Intermediate Shaft No. 16533, price . . . . | $116.47 |
| 1—Intermediate Gear No. 16411, price . . . . . | 136.46 |
| 2—Gypsey Heads, No. 16504, price for two | 88.79 |
| 2—Pinions No. 16409, price for two . . . . . | 72.80 |
| | $414.52 |

Defendant on February 9, 1927, by telegram ordered the jack shaft and equipment specified in plaintiff's letter and confirmed the same by letter, urging all possible speed in its delivery. Plaintiff promised shipment during the week of March 6, 1927, but did not ship the machinery until April 2, 1927, and it was thereafter duly received by defendant.

Defendant paid for the frame as soon as it was received and did not discover until afterwards that

plaintiff had not shipped style G. 2563, but a different frame constructed for windlass known as style M. 2939L. Defendant also discovered that the jack shaft and equipment furnished by plaintiff were not the proper parts for the windlass style G. 2563 and could not be used without making certain changes. The affidavit of defense averred knowledge by plaintiff that repairs to steamships must be made in the shortest possible time and that if there is any unnecessary delay in completing the repairs, the contractor is liable for the loss suffered by the owners, which amounts to a large sum for each day's delay.

To avoid the loss resulting from the delay following the shipment back to plaintiff of the frame and jack shaft and equipment and the manufacture by the latter of a new frame, jack shaft, etc., and to minimize the damage as much as possible, defendant sent the said goods or machinery to its shop and had the changes made there at a cost, duly itemized, of $50.39 for the frame and $178.88 for the jack shaft, gear, etc., averring that had it returned said goods to plaintiff for alterations or for new parts which could be used in said windlass it would have caused a loss in excess of $1,000; of all of which it duly notified plaintiff and remitted the invoice price of said machinery less the cost of making said changes.

We are not satisfied that under the peculiar facts averred in the affidavit of defense and claim for set-off the plaintiff was entitled to summary judgment for the balance of the invoice price of the jack shaft, gear, etc.

We think it clear that an implied warranty arose on the part of plaintiff that the frame, jack shaft, gear, etc., were suitable for the windlass style G. 2563, (Borrekins v. Bevan & Porter, 3 Rawle 23, 37; Samuel v. Delaware River Steel Co., 264 Pa. 190, 192) and on breach of this warranty defendant could have returned the goods and recovered the price paid for

the frame. But it was not bound to do so. It could, at its election, retain the goods and sue for the breach of warranty, or set off damages for such breach against an action for the purchase money: Samuel v. Delaware River Steel Co., supra; Sheritt & Stoer Co. v. Roberts Engineering Co., 73 Pa. Superior Ct. 147, 150; Sales Act of 1915, P. L. 543, sections 15 and 69. It was its duty under the law to minimize the damages resulting from the breach as much as possible. Ordinarily the measure of damages where there is such a breach is the difference in value between the article as warranted and that delivered: Miller Lock Co. v. Diehl Mfg. Co., 37 Pa. Superior Ct. 585, 591; Samuel v. Delaware River Steel Co., supra. It is not clear to us, however, that in the peculiar circumstances of this case the cost of the necessary changes to the frame, jack shaft and gear bore no relation to the value of the articles delivered. The evidence on the trial may help to clarify the matter.

While the case of Arundel Sand & Gravel Co. v. Irwin, 70 Pa. Superior Ct. 546, relied on by appellee, is similar in some respects to this case, there were wanting in that case many of the peculiar and unusual circumstances present in this one. They are sufficient to distinguish the cases.

The judgment is reversed with a procedendo.