RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0123p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

JAYLEN SIMPSON,

        *Defendant-Appellant.*

No. 25-5729

_____

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:24-cr-20218-1—Jon Phipps McCalla, District Judge.

Decided and Filed:  April 27, 2026

Before:  STRANCH, BLOOMEKATZ, and HERMANDORFER, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Ashleigh Atasoy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

### OPINION

_____

JANE B. STRANCH, Circuit Judge.  Jaylen Simpson was convicted of carjacking resulting in serious bodily injury, as well as using, carrying, and discharging a firearm during the carjacking.  During jury selection, Simpson pleaded guilty.  He argues on appeal that the district court erred by declining to apply a two-level reduction for acceptance of responsibility and, separately, by giving excessive weight to the nature and circumstances of the offense at sentencing.  Finding these arguments unpersuasive, we **AFFIRM**.

# I.  BACKGROUND

The details of Simpson's offense conduct are undisputed.  On May 16, 2024, Simpson entered the backyard of Anthony Crumpton's house and hid behind a storage shed.  Several minutes later, when Crumpton walked out of his house into the backyard, Simpson shot him in the abdomen with a 9mm pistol.  Simpson then took Crumpton's keys and drove away with his 2017 Kia Cadenza.  He was apprehended several hours later by the Memphis Police Department after fleeing in the vehicle and then on foot.  Later that day, Simpson was transported to the Violent Crimes Unit, where he waived his *Miranda* rights and agreed to speak with investigators.  When asked whether the shooting was intentional or accidental, he replied, "[t]he second one I guess."

Crumpton was hospitalized for five weeks, during which he endured five surgeries, and completed physical therapy thereafter.  Despite these medical efforts, which included multiple skin grafts, Crumpton was left permanently injured and unable to work.  As of Simpson's sentencing in July 2025, Crumpton continued to experience severe swelling and difficulties due to a large mass on his abdomen resulting from the shooting.

A grand jury indicted Simpson on two counts: (1) carjacking resulting in serious bodily injury, in violation of 18 U.S.C. § 2119(2); and (2) knowingly using, carrying, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  Simpson pleaded guilty to these charges during jury selection.  The Presentence Investigation Report calculated Simpson's adjusted offense level at 28, which included a base offense level of 20, a six-level increase because the victim sustained a permanent or life-threatening bodily injury, and a two-level increase because the offense involved carjacking.  The PSR declined to apply a two-level reduction for acceptance of responsibility, citing the timing of Simpson's plea and the following statement that he gave to a probation officer:

> I accept responsibility for taking the victim's car.  When I went to the backyard, I didn't expect to see anyone there.  When I saw the victim, the gun accidentally went off.  I panicked, and I took the car.  I felt bad that the victim was injured, and I'll never do this again.

R. 40, Presentence Investigation Report, PageID 98. The PSR's adjusted offense level calculation of 28, combined with Simpson's criminal history category of I (he had no prior convictions), resulted in a Guidelines range of 78 to 97 months of imprisonment for the carjacking offense, plus a mandatory minimum consecutive sentence of 120 months for his use of the firearm during the carjacking.

Simpson filed a written objection to the PSR, arguing that he should receive the two-level reduction for acceptance of responsibility. He stated that he pleaded guilty before the jury was fully selected and should thus receive a benefit for willingly giving up his trial rights, that he was only 23 years old and had little exposure to the criminal legal system, and that he had underlying mental health concerns of which the district court was aware.

At sentencing, the Government called Crumpton to the stand before the court heard arguments. Crumpton testified to his recollection of the shooting and the physical, psychological, and financial struggles he experienced as a result, including his hospitalization and extensive medical treatment, how the injury left him unable to work, and the trauma of being shot in his own backyard. The court then heard arguments on the acceptance of responsibility issue, and, in dialogue with defense counsel, the court emphasized Simpson's statements regarding whether he intended to shoot Crumpton:

> [T]he defendant has always taken the position that he accidentally shot the victim, but the fact is that he pointed a loaded weapon at the victim[;] . . . he actually hit the victim, which is much indication or some indication, some evidence, that, in fact, he intended to shoot him. . . . The defendant has consistently at least minimized his role in the horrific injuries that the victim received.

R. 48, Sent'g Hr'g Tr., PageID 177. The court ultimately found Simpson did not demonstrate acceptance of responsibility and overruled his objection. The court then applied the 18 U.S.C. § 3553(a) sentencing factors and imposed a sentence of 217 months of imprisonment, consisting of a top-of-the-Guidelines sentence of 97 months for the carjacking plus the mandatory minimum 120 months for the firearm offense, followed by five years of supervised release.

## II.  ANALYSIS

Simpson raises two arguments on appeal: (1) that the district court erred by denying him a two-level reduction for acceptance of responsibility, and (2) that the 97-month sentence for the carjacking crime was substantively unreasonable because the district court gave inordinate weight to the nature and circumstances of the offense.

### A.  Acceptance of Responsibility

The Sentencing Guidelines provide for a two-level reduction from a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  When a defendant qualifies for this reduction under § 3E1.1(a) and meets other prerequisites, he may receive an additional one-point reduction under § 3E1.1(b) if he "timely notif[ies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."  Whether a defendant "clearly demonstrates acceptance of responsibility" under § 3E1.1(a) is a fact-dependent inquiry.  The Application Notes provide a non-exhaustive list of "appropriate considerations" for determining whether a defendant is entitled to the two-point reduction:

> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . ; (B) voluntary termination or withdrawal from criminal conduct or associations; (C) voluntary payment of restitution prior to adjudication of guilt; (D) voluntary surrender to authorities promptly after commission of the offense; (E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; (F) voluntary resignation from the office or position held during the commission of the offense; (G) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and (H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

§ 3E1.1 cmt. n.1 (U.S. Sent'g Comm'n 2024).

A defendant's "truthful guilty plea offered prior to trial . . . constitutes significant evidence of acceptance of responsibility."  *United States v. Hollis*, 823 F.3d 1045, 1047 (6th Cir. 2016) (per curiam); *see* § 3E1.1 cmt. n.3.  But the fact of a defendant's guilty plea is not dispositive.  "Conviction by trial . . . does not automatically preclude a defendant from

consideration for [the] reduction," and a "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *Id.* at cmt. n.2–3. Thus, when a defendant demonstrates "significant evidence" of acceptance of responsibility, such as by pleading guilty, the key inquiry becomes whether that evidence is "outweighed by conduct inconsistent with such acceptance." *Hollis*, 823 F.3d at 1047; *see* § 3E1.1 cmt. n.3. We have also instructed that "[d]istrict courts may consider the timeliness of a defendant's plea under § 3E1.1(a) only to the extent that timeliness reflects the extent of the defendant's sincerity in accepting responsibility"; this is because the additional one-point reduction permitted under § 3E1.1(b) accounts *separately* for the expenditure of Government resources to prepare for trial. *Hollis*, 823 F.3d at 1047–48.

"This court applies clear-error review to the district court's findings of fact and de novo review to the district court's interpretation of the Guidelines." *United States v. Florence*, 150 F.4th 773, 780 (6th Cir. 2025). In the context of acceptance of responsibility reductions, though, there has been some uncertainty in our case law regarding which standard of review applies to a district court's application of § 3E1.1 on appeal. We applied de novo review consistently until the Supreme Court's decision in *Buford v. United States*, which held that district courts are entitled to deference in determining whether a defendant's offenses are "related" for purposes of a career-offender sentencing enhancement. 532 U.S. 59, 62–66 (2001); *see United States v. Merritt*, 102 F.4th 375, 379 (6th Cir. 2024) (collecting cases). *Buford* explained that a district court's assessment of whether offenses are "related" under the Sentencing Guidelines "grows out of, and is bounded by, case-specific detailed factual circumstances," even when the underlying facts are undisputed. 532 U.S. at 65–66. After *Buford*, we have generally, though not without exception, reviewed district court applications of § 3E1.1 for clear error. *See Merritt*, 102 F.4th at 379–80 (collecting cases); *Hollis*, 823 F.3d at 1047 (applying de novo review to a purely legal question regarding § 3E1.1). We clarified in *Merritt* that "we review the question of whether a defendant has demonstrated that he accepted responsibility for clear error," *id.* at 381, "even when the facts are undisputed and the only question on appeal is whether the district court appropriately applied the guideline to the facts," *United States v. Jett*, 154 F.4th 459, 464 (6th Cir. 2025) (citing *Merritt*, 102 F.4th at 379–81). This general rule of clear error review reflects the fact-bound nature of determinations like whether a defendant's expressions of acceptance are

truthful and sincere, which benefit from "the special competence of the district court," *Buford*, 532 U.S. at 64; *see also Merritt*, 102 F.4th at 380–81.

Here, the district court's discussion at sentencing of whether Simpson clearly demonstrated acceptance of responsibility under § 3E1.1(a), as well as Simpson's argument on appeal, focused primarily on fact-specific analysis regarding whether he truthfully admitted his criminal conduct. Because this is an issue of "whether the district court appropriately applied the guideline to the facts," *Jett*, 154 F.4th at 464, clear error review applies.

We pause before proceeding to clarify a few points related to the timing of Simpson's plea, which occurred during jury selection. During sentencing, the district court did discuss the expenditure of Government resources—it noted, for instance, that because Simpson pleaded guilty "at the stage of trial where we were, literally, not very far from [the] beginning of opening statements, not very far from [the] beginning of the first witnesses, the Government was not spared any preparation time." R. 48, PageID 176–77. Given that Simpson contended that he was entitled to the two-point reduction under § 3E1.1(a) only, not the additional third point available under § 3E1.1(b), this statement could suggest an improper consideration of trial preparation resources under § 3E1.1(a). *See Hollis*, 823 F.3d at 1047. This possibility does not affect our application of clear error review in this case, however, because Simpson does not contend that the district court made a legal error by considering an impermissible factor under the Guidelines. *See id.*

Instead, Simpson's briefing discusses the timing of his plea in a single, limited capacity: citing the district court's reference to "the stage of trial," R. 48, PageID 176, he argues that his plea during jury selection came "prior to the commencement of trial," not during trial, because selection was ongoing and the jury had not yet been sworn in. This argument is unpersuasive in the context of his § 3E1.1(a) appeal, and we decline to decide when trial begins for purposes of § 3E1.1(a) here, for several reasons. First, it is not clear that the district court opined on when trial begins; "the stage of trial" is an imprecise description, and its use in this record does not necessarily indicate that the district court understood Simpson's plea as offered *after* trial commenced. Second, the Application Notes make clear that whether a defendant pleads guilty is not dispositive, *see* § 3E1.1 cmt. n.2–3, which suggests that the precise timing of a guilty plea

relative to when trial begins is not dispositive, even if "timeliness may be an appropriate consideration . . . when the lateness of the defendant's plea indicates that the defendant is pleading guilty" because of the strength of the government's case, *Hollis*, 823 F.3d at 1049. Third, the record reflects that the district court found other considerations persuasive—namely, Simpson's statements regarding whether the shooting was intentional and whether he minimized his culpability. We focus on the same considerations here.

In finding that Simpson did not clearly demonstrate acceptance of responsibility under § 3E1.1(a), the district court emphasized that he had "always taken the position that he accidentally shot the victim." R. 48, PageID 177. Simpson first took that position when questioned on the day of his offense, and he maintained it when interviewed for the PSR after pleading guilty. At sentencing, the court's discussion of Simpson's intent-based statements formed the basis of its decision that his guilty plea was "outweighed by conduct inconsistent with" acceptance of responsibility. *Hollis*, 823 F.3d at 1047. The court emphasized that Simpson "pointed a loaded weapon at the victim," later explaining that "the Court doesn't have evidence that it was unintentional other than the defendant's statement[,] and we have just normal observation that unintentional discharge of a firearm directly at someone is questionable as to whether it was actually unintentional." R. 48, PageID 177, 179. In other words, the court found Simpson's claims that he shot Crumpton by accident to be unbelievable.

Simpson points out that he admitted to shooting the gun intentionally during the colloquy at his change of plea hearing. But Simpson returned to his earlier position that the shooting was accidental during his interview for the PSR, in which he stated,

> I accept responsibility for taking the victim's car. When I went to the backyard, I didn't expect to see anyone there. When I saw the victim, the gun accidentally went off. I panicked, and I took the car. I felt bad that the victim was injured, and I'll never do this again.

R. 40, PageID 98. Simpson further argues that these statements—including his claim that "the gun accidentally went off," as well as his expression of remorse—constituted an unsuccessful yet non-frivolous challenge to the relevant offense conduct. The Application Notes instruct that "[a] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a

defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous." § 3E1.1 cmt. n.1(A). That distinction is not persuasive here, however, because the district court pointed to Simpson's repeated minimizations of his role in the offense and his late acceptance of responsibility as Simpson's "conduct" that was "inconsistent with" acceptance of responsibility, *id.* at cmt. n.3.

At bottom, the record indicates that the district court had serious doubts regarding the truthfulness and sincerity of Simpson's statements about his offense conduct. It found that, rather than truthfully admitting the relevant conduct, Simpson "consistently at least minimized his role in the horrific injuries that the victim received." R. 48, PageID 177; *see* § 3E1.1 cmt. n.1. These are precisely the kind of fact-bound determinations under § 3E1.1(a) to which we afford significant deference on appellate review, *see Merritt*, 102 F.4th at 380–81, and we find they are sufficiently supported by the record. Thus, we hold that the district court's determination that Simpson was not entitled to a two-level reduction for acceptance of responsibility under § 3E1.1(a) was not clearly erroneous.

### B. Substantive Reasonableness

"Substantive reasonableness focuses on whether a 'sentence is too long (if a defendant appeals) or too short (if the government appeals).'" *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)). To evaluate whether a sentence is substantively reasonable given the 18 U.S.C. § 3553(a) sentencing factors, "we ask whether the sentencing court gave reasonable *weight* to each relevant factor." *Id.* When a district court places "too much weight on some of the § 3553(a) factors and too little on others, the sentence is substantively unreasonable." *Id.* (citation modified). We have emphasized, though, that when "it does seem that the district court assigned greater weight to certain sentencing factors—such as the nature and circumstances of the present offense . . . — this does not mean that the court unreasonably weighed the factors. We have recognized that one or two factors often prevail while others pale." *United States v. Hawkins*, 165 F.4th 442, 457–58 (6th Cir. 2026) (citing *United States v. Gardner*, 32 F.4th 504, 531 (6th Cir. 2022)). "The district court's decision to assign more or less weight to a given factor is 'a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing

decisions reflects as much.'"  *Boucher*, 937 F.3d at 707 (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).  Finally, when a sentence falls within the applicable Guidelines range, we presume it is substantively reasonable.  *Id.*

Here, because Simpson's 97-month carjacking sentence was within the relevant Guidelines range of 78-97 months, we begin with the rebuttable presumption that it was reasonable.  *See id.*  Simpson contends he can overcome that presumption because, as he puts it, "the court was blinded by the weight given to the nature and circumstances of the offense" and did not give adequate consideration to mitigating factors such as his age and lack of criminal history.

The record reflects that the district court engaged in an extended discussion of the § 3553(a) sentencing factors, reciting them sequentially from the statute as it addressed them.  It first addressed the nature and circumstances of the offense, recounting Simpson's offense conduct and the  information about Mr. Crumpton's terrible injuries, and the history and characteristics of the defendant under § 3553(a)(1).  This analysis of Simpson's history and characteristics included references to his young age and lack of prior convictions.  Then the court discussed the § 3553(a)(2) factors:  As to "the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," § 3553(a)(2)(A), the court noted the carjacking "was an extraordinarily serious offense" and that, "[n]ext to the victim dying, this is as bad as it can get."  R. 48, PageID 199.  Regarding deterrence under § 3553(a)(2)(B), the court posited that in "American society today, that message [of general deterrence] is hard to get out," even though in bygone eras, "a case like this . . . would have been covered extensively by the print media."  R. 48, PageID 200.  It then placed significant emphasis on "the need . . . to protect the public from further crimes of the defendant," § 3553(a)(2)(C), calling that factor "a real concern here" and remarking that Simpson "showed total indifference to human life. . . .  There was no reason to shoot anybody."  R. 48, PageID 201.  Finally, the court discussed the need for rehabilitation under § 3553(a)(2)(D) so that Simpson might "successful[ly] return to public life when he is eventually released."  R. 48, PageID 202.  It then discussed the § 3553(a) factors in relation to the Guidelines range.  The comprehensiveness of

this analysis suggests that the district court's application of the sentencing factors was reasonable.

The record does reflect that the district court gave significant weight to the nature and circumstances of Simpson's offense, including the harm that resulted from it, but "this does not mean that the court unreasonably weighed the [§ 3553(a)] factors." *Hawkins*, 165 F.4th at 457–58. Here, the district court considered the nature and circumstances of Simpson's offense in multiple capacities, but nothing in the Sentencing Transcript shows that the district court gave that consideration an "*unreasonable* amount of weight." *Id.* at 458. On this record, Simpson cannot overcome the presumption that his within-Guidelines sentence was reasonable. *See Boucher*, 937 F.3d at 707.

We hold that the district court reasonably weighed the § 3553(a) factors when it sentenced Simpson for the carjacking offense and, thus, that his sentence was substantively reasonable.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.